**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| QUVIS, Inc. | ) | Case No. 09-10706 |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |

**MOTION TO LIFT AUTOMATIC STAY**

Seacoast Capital Partners II, L.P. ("Seacoast"), a secured creditor to the Debtor and Debtor-in-Possession in the above-captioned case (the "Debtor") files this Motion to lift the automatic stay (the "Motion"). In support of the Motion, Seacoast respectfully represents:

**Background**

1. Prior to its bankruptcy filing, the Debtor issued secured promissory notes (the "Notes") to several creditors (each a "Noteholder") pursuant to a First Amended and Restated Convertible Loan and Security Agreement, dated June 30, 2003 (the "Note Agreement").[1]

2. Under the Note Agreement, individuals or entities were allowed to loan the Debtor money in exchange for a security interest in the following of the Debtor's assets (the "Collateral"):

> ". . .the Borrower hereby pledges, and grants to the Lenders a security interest in all of the right, title and interest of the Borrower in and to all of the property, assets, interests and undertakings of the Borrower, whether now owned or hereafter acquired, existing or arising, real, person or mixed, tangible or intangible, of every kind and description, wherever located, together with all renewals thereof, substitutions therefor and proceeds thereof and all interest, dividends, income and revenue therefrom, excluding all factored accounts receivable whether now existing or in the future, but otherwise including all

[1] The Court already has had occasion to construe the Note Agreement, as reflected by the Court's "Order on Debtor's Motion to Determine Secured Status of Noteholders" issued on June 1, 2010 (the "Secured Status Order"). The terms of the Note Agreement, offered as Exhibit 1 during the March 17, 2010 hearing that resulted in the Secured Status Order, are incorporated herein by reference.

accounts, chattel paper, all contracts, all deposit accounts, all equipment, all fixtures, all goods, all instruments, all inventory, all cash of the Borrower, all patents, trademarks, trade names, copyrights and other intellectual property or intellectual property rights of a secured party under the Uniform Commercial Code of the State of Kansas as it may be amended from time to time."[2]

3. On May 26, 2005, the Debtor's board of directors[3] approved a resolution authorizing the Debtor issue $5.5 million in aggregate principal amount of Notes to Seacoast. A true and correct copy of the Debtor's corporate minutes approving the issuance of the Notes is attached hereto as Exhibit 1.

4. On or about May 27, 2005, the Debtor and Seacoast entered into that "Joinder Agreement to First Amended and Restated Convertible Loan and Security Agreement" a true and correct copy of which is attached as Exhibit 2.

5. On June 1, 2005, the Debtor issued that "First Amended and Restated 8.0% Convertible Senior Secured Note Due June 30, 2006 " (the "Seacoast Note") to Seacoast. A true and correct copy of the Seacoast Note is attached as Exhibit 3.

6. The Notes matured on June 30, 2006.[4] Seacoast has not received any payments on the Seacoast Note since it matured.

7. On June 14, 2007, Seacoast filed a UCC-1 with the Kansas Secretary of State, as shown by the true and correct copy attached as Exhibit 4, providing public notice of the security interest.[5]

---

[2] See Secured Status Order at page 4.

[3] As shown on the attached Exhibit 1, William Gary Baker, Kenbe Goertzen, Owen Leonard, Becky Lester, and Vernon R. Nelson served as the directors on May 26, 2005.

[4] As reflected by QuVIS board minutes dated January 17, 2006, the board authorized an extension of the maturity date of all the Notes, from June 30, 2006 until June 30, 2007. While this extension was acceptable to Seacoast, it appears that unanimous Noteholder approval for the extension may not have been achieved, thus the June 30, 2006 maturity date is asserted to be the applicable maturity date.

8. As of the involuntary petition date of March 20, 2009, the Debtor is indebted to Seacoast in an amount of no less than $5,387,042, plus applicable interest and attorney's fees. Seacoast has timely filed a proof of claim asserting such debt remains due and owning.

**Basis for Relief**

9. The filing of a bankruptcy petition operates to automatically stay a secured creditor from foreclosing or taking action to realize upon its collateral. 11 U.S.C. § 362(a)(5). However, a secured creditor may seek relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, which provides for relief from the stay upon a showing of, among other things, "cause." 11 U.S.C. § 362(d). Here, the stay should be lifted with respect to the Collateral because (A) there is "cause" for lifting the stay, and (B) the Debtor has no equity remaining in the Collateral and the Collateral is not necessary for an effective reorganization.

**A. There is "Cause" for Lifting the Stay**

10. Section 362(d) provides that the Court may terminate the automatic stay "for cause," including, but not limited to, a lack of adequate protection. Here "cause" exists because the Debtor can no longer adequately protect Seacoast's interest in its depreciating Collateral. A significant portion of the value of the Collateral is comprised of intellectual property interests regarding patents covering electronic technologies. Because these patents and other intellectual property relate to technologies that are subject to the risk of technological obsolescence, the value of the Collateral may continue to decline as the risk of technological obsolescence drives down the value of such technologically related intellectual property over time.

[5] See also Secured Status Order at page 23. The Secured Status Order also includes the Court's prior findings regarding the UCC-1 filings of various Noteholders.

11. Additionally, although the Debtor proposed its initial Plan more than six months ago, the Debtor's reorganization has been mired in delays and hangups that have prevented confirmation of a plan and conclusion of the Debtor's reorganization. In light of the declining value of Seacoast's collateral, these continued Plan confirmation delays have prejudiced Seacoast and will continue to impair the recovery that Seacoast will receive with respect to its interest in the Collateral.

**B. No Equity Remains in the Collateral, Which is not Necessary to the Debtor's Reorganization**

12. Section 362(d)(2) of the Bankruptcy Code provides that the Court may lift the automatic stay if the debtor does not have any equity in such property and the property is not necessary to an effective reorganization. The creditor has the burden of establishing a debtor's lack of equity in the property. 11 U.S.C. § 362(g). The debtor has the burden of proof on all other issues, including adequate protection, and the necessity of the property for an effective reorganization. *Id.* If the debtor cannot meet its burden, the stay is lifted.

13. The Collateral is encumbered by Seacoast's lien securing more than $5.3 million of Note obligations. The Debtor's schedules indicate that the known value of the Collateral is approximately $179,184, and Debtor has not provided any other evidence to suggest that the value of the collateral will meet or exceed a value that in any way approximates the indebtedness secured by Seacoast's lien.[6] While Seacoast is the opinion that the value of the Collateral exceeds the scheduled value of $179,184, the value of the Collateral does not exceed the $5.3 million owed to Seacoast.

---

[6] Further relevant to the determination of Debtor's lack of equity, is that fact that 24 Noteholders filed UCC-1s prior to December 20, 2010 (date which is 90 days before the Involuntary Petition date of March 20, 2010.) See Document #212-3, which was offered as Exhibit 3 at the March 17, 2010 hearing. In order for the Debtor to have equity in the Collateral, the value would have to exceed the sum of all 24 of these Noteholder claims.

14. The Debtor has the burden of establishing that the Collateral is necessary for an effective reorganization. 11 U.S.C. § 362(g). In order to establish that the Collateral is essential to an effective reorganization, the Debtor must demonstrate both that the Collateral is essential to its business, and that the Debtor has a reasonable prospect of a successful reorganization within a reasonable time. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-276 (1988); *In re RIM Dev., LLC*, 2010, *33-34 Bankr. LEXIS 1303 (Bankr. D. Kan. 2010).

15. There is not a reasonable prospect that the Debtor will be able to reorganize. The Debtor's reorganization proceedings have already dragged on for more than a year. While Seacoast was hopeful that the Debtor could garner some support for its reorganization plan filed on November 6, 2009, over six months has passed since the filing of the Plan. The Court has denied approval of the Debtor's related disclosure statement. There is no longer a reorganization in prospect.

**Conclusion**

WHEREFORE, Seacoast prays for an order granting relief from the automatic stay, allowing it to foreclose its security interest in the Collateral[7]; and for such other and further relief as the Court deems just and equitable.

[7] Seacoast is of the view that an order lifting the stay is in an "in rem" order, and that all persons holding liens on the Collateral would no longer be subject to the stay of lien enforcement against the Collateral if the Motion were to be granted.

Dated: June 17, 2010

Respectfully submitted,

FLEESON, GOOING, COULSON & KITCH, L.L.C.

By: /s/ Thomas J. Lasater

Thomas J. Lasater, Reg. No. 11440
P.O. Box 997
Wichita, Kansas 67201
Telephone: (316) 267-7361
Email: tlasater@fleeson.com

and

J. Maxwell ("Max") Tucker
Patton Boggs LLP
2001 Ross Avenue, Suite 3000
Dallas, Texas 75201
Telephone: (214) 758-1500
Email: mtucker@pattonboggs.com

ATTORNEYS FOR SEACOAST CAPITAL PARTNERS II, L.P.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of June, 2010, a true and correct copy of this Motion to Lift Automatic Stay was filed electronically with the United States Bankruptcy Court for the District of Kansas using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, and that in addition the parties on the attached list were served with the Motion by first class United States mail, postage prepaid.

/s/ Thomas J. Lasater