IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE: )
 )
QuVIS, INC., ) Case No. 09-10706
 ) Chapter 11
 Debtor. )
 )

**RESPONSE OF OFFICIAL UNSECURED CREDITORS' COMMITTEE TO MOTION OF SEACOAST CAPITAL PARTNERS II, L.P. FOR RELIEF FROM STAY**

The Official Unsecured Creditors' Committee ("Committee") for its Response states:

1. Seacoast Capital Partners II, L.P. ("Seacoast") alleges it is owed an amount "of no less than $5,387,042 ..." (Motion ¶8). However, the only evidence of this obligation attached to the motion is the "First Amended and Restated 8.0% Convertible Senior Secured Note Due June 30, 2006" (Motion Exhibit 3). This "note" is for $3,160,066.40. The basis for the claim that Seacoast is owed "no less than $5,387,042" does not, therefore, appear in the Motion.

2. Seacoast seeks relief to allow it "... to foreclose its security interest in the Collateral" (Motion p. 5). The "Collateral" apparently includes all of the Debtor's property. Seacoast also asserts that its relief would be effective as to "all persons holding liens on the Collateral" (Motion, p. 5 fn 7). As previously noted by the Court, a number of the "noteholders" assert liens which are not perfected, or which were preferentially perfected.

3. A full listing of the "Collateral" and its value has not been provided. A substantial portion of the Debtor's assets are listed in the schedules with a value of "unknown." This includes the "intellectual property interests" referred to by Seacoast (Motion ¶10). Further, there is no evidence of perfection as to the Debtor's interest in "QuVIS Software, Inc.", a separate entity.

4. The stay may be lifted under §362(d):

   "(1) for cause, including the lack of adequate protection...
   [or]

431759

> (2) with respect to a stay of an act against property ..., if –
> (A) the debtor does not have equity in such property; and
> (B) such property is not necessary to an effective reorganization."

**"For Cause"**

5. "Cause" is not defined in the Bankruptcy Code. Relief from stay for cause is a discretionary determination made on a case by case basis. <u>Pursifull v. Eakin</u>, 814 F. 2d 1501, 1506 (10th Cir. 1987). The moving party has the burden to show that "cause" exists to lift the stay, after which the burden shifts to the debtor to demonstrate why the stay should remain in place. <u>In re Busch</u>, 294 B.R. 137, 140-41 (10th Cir. BAP 2003).

6. In determining whether "cause" exists, a court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief..." <u>In re Robbins</u>, 964 F. 2d 342, 345 (4th Cir. 1992). See also e.g. <u>In re White</u>, 410 B.R. 195, 200-02 (Bankr. W.D.Va 2008) (because the automatic stay is one of the fundamental protections provided by the bankruptcy laws, the court must also consider the consequences to the debtor as well as the bankruptcy estate in deciding to lift the stay); <u>In re DBSI, Inc.</u>, 407 B.R. 159, 166-67 (Bankr. D. Del 2009) (court should apply balancing test, relief denied where granting "would cause significant prejudice to [the estate] as it continues to resolve numerous outstanding disputes.")

7. The case by case approach includes a "totality of the circumstances" test. See e.g. <u>In re Beane</u>, 404 B.R. 942, 948 (M.D. Fla. 2008); <u>In re SCO Group Inc.</u>, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

8. Here, Seacoast contends that "cause" exists because of an asserted "risk of technological obsolescence" in the Debtor's technologies and the "delays and hangups that have prevented confirmation of a Plan." (Motion ¶s 10 and 11).

9. However, Seacoast has presented no evidence to support its "declining value" or "risk of obsolescence" argument. In fact, there has been no attempt in this case to value the debtor's "technologies" or to pursue marketing of the same. Seacoast has actively <u>opposed</u> any attempt to do so. See e.g. Seacoast Response to Debtor's Motion to Determine ... Secured Status (Docket # 235, p. 13) (there is no need to value the collateral).

10. Moreover, the "totality of the circumstances" should include consideration of:

(a) Under the Motion itself, the Debtor has been in default with Seacoast since <u>June 30, 2006</u>, yet Seacoast did nothing to foreclose its asserted lien. In the interim, Seacoast allowed the Debtor to continue in business, and incur additional debt to e.g. trade creditors and wages claimants. These creditors would now be prejudiced if Seacoast is allowed to foreclose its asserted lien on all the debtor's assets without an examination of potential issues described herein.

(b) The WIG has asserted the possibility that Seacoast's claim should be equitably subordinated based (primarily) on the fact that at the time Seacoast perfected its security interest by filing its own, separate, UCC-1, Seacoast held a position on the Debtor's Board. Seacoast has, of course, taken the position in the case that the security interest was in favor of all "noteholders." Under the "notes" the <u>debtor</u> was responsible to perfect the security interests. Seacoast, however, did not protect all noteholders, by filing on their behalf, but only itself.

(c) The Committee believes that grounds may well exist to re-characterize Seacoast's "debt" as equity. If the Court agrees, Seacoast will not hold a secured claim at all and stay relief would clearly be inappropriate.

**"Equity/Necessary for an Effective Reorganization"**

11. Seacoast contends the Debtor has no equity in the Collateral. In support, Seacoast states only that "... Debtor has not provided any ... evidence to support that the value of the

collateral will meet or exceed a value that in any way approximates the indebtedness secured by Seacoast's lien" (Motion ¶13).

12. However, it is <u>Seacoast's</u> burden to establish that the Debtor lacks equity. §362(g). Again, there has been <u>no</u> effort made in this case to value the Debtor's most valuable assets – the intellectual property.

13. The short answer here is that relief cannot be granted without <u>evidence</u> of value.

14. As to whether the Debtor's assets, including its intellectual property, are "necessary for an effective reorganization," the inquiry is whether there is "a reasonable possibility of a successful reorganization within a reasonable time". <u>United Sav. Ass'n of Texas v. Timbers of Inword Forest Associates, Ltd</u>., 484 U.S. 365, 376 (1988). As stated in <u>In re Brian Wise Trucking, Inc.</u>, 386 B.R. 215, 218-19 (Bankr. N.D. Ind 2008):

> "Courts, including this one, have often struggled to articulate this standard with greater clarity and to describe precisely what must be done in order to fulfill it; yet, beyond the recognition that the issue is 'measured on a sliding scale,' *In re Grand Sports, Inc.*, 86 B.R. 927, 974 (Bankr.N.D.Ind.1988), and is 'a moving target,' *Matter of Holly's Inc.*, 140 B.R. 643, 699 (Bankr.W.D.Mich.1992), that 'has different meanings depending on the stage of the proceeding,' *In re Ashgrove Apartments of DeKalb County*, 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990), so that 'the older the case, the better it has to look,' *In re Eisentrager*, 102 B.R. 181, 182 (Bankr.W.D.Mo.1989), those efforts have not met with much success. This is largely because every chapter 11 case is unique and the inquiry as to the possibility that the debtor can be successfully reorganized within a reasonable amount of time is highly fact-sensitive and can only be made on a case-by case basis. *Holly's*, 140 B.R. at 700. It involves not just the age of the case but also what the debtor needs to do in order to accomplish its reorganizational goals and the progress that has been made towards them.
> ...Thus, depending upon the debtor and what it needs to do in order to reorganize its affairs, a successful reorganization can, quite reasonably, be a matter of only a few months, or several years, or anywhere in between. In other words, as much as one might like to be able to lay out precise road maps and timetables which say that by a particular point in time, a debtor must be able to demonstrate thus and so with a particular degree of precision, it is no possible to do so. Instead, <u>what § 362(d)(2) calls for is much</u>

more of a discretionary inquiry, rather than a mechanical one, which, at bottom, requires the court to make a judgment call as to whether the debtor is making sufficient progress towards a sufficiently realistic goal such that its efforts should be allowed to continue." (emphasis added)

15. Here, the Court has rejected the Debtor's First Plan, which was based on the view that all "noteholders" were secured and perfected. Seacoast supported that view. It is likely not possible to fashion another Plan until the prospective equitable subordination and re-characterization claims against Seacoast are determined. In the meantime, the Court should not allow Seacoast to end the case, to the detriment of other creditors, by granting it relief to foreclose.

WHEREFORE, the Committee requests that the Motion be denied.

SUBMITTED BY:

KLENDA, MITCHELL, AUSTERMAN
    & ZUERCHER, L.L.C.
301 North Main, Suite 1600
Wichita, Kansas 67202
Telephone: (316) 267-0331
Facsimile: (316) 267-0333
jmmorris@kmazlaw.com

By: */s/ J. Michael Morris*
    J. Michael Morris #09292
    Attorney for Official Unsecured
      Creditors' Committee

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2010, I electronically filed the foregoing Response with the Clerk of the Bankruptcy Court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the Debtor and other parties in interest.

By: */s/ Sarah M. Fisher*
    Sarah M. Fisher