**SO ORDERED.**

**SIGNED this 12 day of October, 2010.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| QuVIS, INC. | ) | Case No. 09-10706 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER GRANTING LIMITED MODIFICATION OF THE AUTOMATIC STAY
## ON MOTION FILED BY SEACOAST CAPITAL PARTNERS, II, L.P.

Seacoast Capital Partners, II, L.P. ("Seacoast"), a secured noteholder of the debtor QuVis, Inc., seeks relief from the automatic stay to foreclose its security interest in its collateral by taking possession of and conducting an Article 9 non-judicial commercial sale of the debtor's assets, exclusive of all factored accounts receivable.[1] The Unsecured Creditors Committee ("Committee"),

---

[1] Dkt. 354.

-1-

Douglas A. Friesen, M.D., Marilyn R. Friesen Greenbush, Ph.D., and Douglas C. Cusick , J. Greg Kite, the Christine M. Baugher Revocable Living Trust, the Wichita Investment Group, LLC ("WIG"), JFM Partnership ("JFM") and Debtor all object.[2] Seacoast filed its motion on June 17, 2010 and the Court conducted a preliminary hearing on August 12, 2010. The Court set this matter for a final hearing on September 2, 2010 to comply with 11 U.S.C. § 362(e)'s mandate that a hearing be conducted within 30 days of the preliminary hearing or the stay will expire. At the September 2, 2010 hearing, Seacoast presented evidence in support of its claim that the debtor lacks equity in the property securing Seacoast's claim and that there is no reorganization in prospect.[3]

Jurisdiction

A request to lift the automatic stay is a core proceeding over which this Court has subject matter jurisdiction.[4]

Facts

This case was commenced as an involuntary petition and the order for relief was entered May 18, 2009 by consent.[5] From the outset, this case has been fraught with disputes among the creditor-

---

[2] Dkt. 363, 366, 367, 368, 400. Douglas A. Friesen, M.D., Marilyn R. Friesen Greenbush, Ph.D., and Douglas C. Cusick were the petitioning creditors in the involuntary case. For convenience, Friesen, Greenbush, Cusick, Kite, the Laugher Trust, and WIG are referred to collectively herein as the "Wichita Investors."

[3] *See* 11 U.S.C. § 362(d)(2). At the evidentiary hearing, Seacoast abandoned its theory of "cause" pled for stay relief pursuant to § 362(d)(1). *See* Dkt. 354.

[4] 28 U.S.C. § 1334(b) and § 157(b)(1) and (b)(2)(G). Seacoast appeared by its counsel J. Maxwell Tucker and Thomas J. Lasater. Debtor appeared by its attorney Nicholas R. Grillot. The WIG Group, including Petitioning Creditors, appeared by its attorney William B. Sorensen. JFM appeared by its attorney Patrick Riordan. The Committee appeared by its attorney J. Michael Morris.

[5] Dkt. 16.

-2-

Noteholders. On November 6, 2009 Debtor filed its chapter 11 plan of reorganization and disclosure statement.[6] The disclosure statement met with numerous objections, including the proper classification of Noteholders. That led to the debtor's filing of a motion to determine the secured status of Noteholders. On June 1, 2010, the Court issued its ruling on the Debtor's Motion to Determine Secured Status of Noteholders ("Noteholder Order").[7] The Noteholder Order addressed the secured status of numerous individuals and entities whom loaned money to Debtor at various times ("Noteholders") and took a security interest in most of Debtor's assets under an instrument titled First Amended and Restated Convertible Loan and Security Agreement.[8] Seacoast, the Wichita Investors, and JFM are all Noteholders.

As this Court previously concluded in the Noteholder Order, Seacoast is a secured and perfected Noteholder in third position whose lien is subordinate to those of the secured and perfected J. Greg Kite and the M. Christine Baugher Revocable Living Trust, and is superior in priority to the secured claim of JFM, which occupies a fifth priority.[9] Seacoast's claim is roughly $5.3 million.[10] J. Greg Kite claims $133,933 and the M. Christine Baugher Revocable Living Trust claims $133,363. JFM's claim exceeds $2.1 million.

The proffered testimony of Steven Schaepe, managing director of Consilium Partners LLC

---

[6] Dkt. 158.

[7] Dkt. 332.

[8] The Noteholders numbered approximately 70 with debt totaling in excess of $40 million dollars.

[9] Seacoast perfected its security interest in debtor's assets by filing a UCC-1 on June 14, 2007. *See* Ex. 4.

[10] Seacoast's debt calculation shows a claim of $5,566,203 as of December 2009. *See* Ex. 8.

-3-

and financial advisor to Seacoast, establishes that he has the requisite expertise to conduct a financial analysis of and value the business of the debtor.[11] Based upon multiples of earnings or net cash flow, Schaepe opines that a sale of the debtor's business as a going concern would yield not more than $1.3 million.[12] Mr. Schaepe did not supply any valuation of assets, but did base his estimates on the debtor's financial performance over a period of years ending prior to the bankruptcy case's being filed in April of 2009. At Shaepe's valuation of $1.3 million, only the claims of Noteholders Kite, Baugher, and Seacoast are "in the money" and the rest of the secured creditors lack any security for their claims.

The testimony of Kenbe Goertzen, debtor's chief executive officer, established that numerous efforts had been made to negotiate a settlement among the warring factions of Noteholders, all without success.[13] In cooperation with Seacoast, the debtor proposed a plan in November, 2009. The Court held the disclosure statement inadequate and granted the debtor additional time to file an amended plan. None was forthcoming and the debtor advises that no further plan will be forthcoming because it lacks the resources to resolve the Noteholder disputes.[14] Debtor's monthly operating report for July 2010 states a beginning cash position of $31,068 and ending cash of $17,822.[15] Debtor valued its personal property at $179,184 in its schedules filed May

---

[11] Mr. Schaepe did not appear at trial, but all of the parties consented to the Court's receipt of his testimony via a proffer.

[12] Ex. 9.

[13] During the bankruptcy proceedings, Noteholders WIG and JFM offered to purchase QuVis assets for $114,962. *See* Ex. 16.

[14] Debtor's counsel moved to withdraw as attorney for the debtor in August of 2010. Dkt. 390. That motion remains pending.

[15] Ex. 15.

19, 2009 and presented no values as to its patent or intellectual property.[16] Its statement of assets and liabilities as of January 2009 represents total assets of $1.4 million.[17] In its liquidation analysis attached to debtor's November 2009 plan, the only asset available for unsecured claims is debtor's interest in QuVis Software, Inc., which debtor valued at $3,000.[18] Debtor's counsel conceded, as did counsel for the three objecting parties, that an effective reorganization is no longer in prospect.

Conclusions of Law

Seacoast brings this stay relief motion under § 362(d)(2). That section provides that the Court has power to terminate, annul, modify, or condition the stay upon a showing that:

> (A) the debtor does not have an equity in such property [that secures a creditor's claim]; and
> (B) such property is not necessary to an effective reorganization.

Seacoast has the burden of proving that the debtor lacks equity in the property.[19] Debtor and the three parties resisting stay relief have the burden on all of the other issues, including the burden to show that the property is necessary to an effective reorganization.[20] The Court concludes that where, as here, the evidence shows that there is no effective reorganization in prospect, the lack of necessity

---

[16] Ex. 10, p. 4, 11-15.

[17] Ex. 14.

[18] Ex. 11. With deductions for administrative expenses and unpaid post-petition operating expenses, the liquidation analysis yields a negative <$54,136> available for unsecured creditors.

[19] *See In re Hanley,* 102 B.R. 36, 37 (W.D. Pa. 1989) ("Equity" for purposes of § 362(d)(2)(A) means the difference between the value of the property and the total claims it secures.); *In re Bowman,* 253 B.R. 233, 238 (8th Cir. BAP 2000) (test for determining equity involves a comparison between the total liens against the property, whether or not all lienholders have requested stay relief, and the property's current value).

[20] *See* § 362(g); *In re Bowman*, *supra.*

is shown. The Court therefore focuses its analysis on the lack of equity prong of § 362(d)(2)(A).

With respect to equity, the Court is satisfied that the value of the assets in which Noteholders Kite, Baugher Trust, and Seacoast claim a lien is significantly less than the sum of their debts. Indeed, the sum of all Noteholders' claims may exceed $40 million. Kite, Baugher Trust, and Seacoast claims represent approximately $5.8 million, far more than the $1.3 million value attributed to QuVis, as evidenced by Mr. Shaepe's analysis and valuation.

While it was Seacoast's burden to prove the debtor's lack of equity, once that proof was offered, it fell to the objecting parties to credibly refute Shaepe's valuation.[21] Accordingly, the Committee's argument that the Shaepe valuation should be discounted because it does not consider the possible liquidation value of the debtor's patents has little impact where none of the objecting parties presented any evidence concerning their value.[22] Certainly there is nothing in the record to suggest that those patents' value would push the sale proceeds above $5.8 million, let alone above the $40 million of total liens against the property. In short, the only credible valuation evidence before the Court – Shaepe's opinion and the debtor's schedules – demonstrates the lack of equity. The Court thus concludes that the debtor lacks equity in the property that secures the Kite, Baugher Trust, and Seacoast claims. This fulfills the first prong of the criteria for stay relief found in §

---

[21] *See In re YL West 87th Holdings I L.L.C.,* 423 B.R. 421 (Bankr. S.D. N.Y. 2010) (bankruptcy court accepted lender's valuation evidence over competing valuation by debtor's expert to find lack of equity).

[22] *See In re Neely,* 2010 WL 1380376 (Bankr. E.D. N.Y. 2010) (Where debtor scheduled the value of the properties as "unknown" and only orally challenged the value of the properties, but did not offer any evidence of value, the stay would be lifted pursuant to § 362(d)(2)); *In re Carlsbad Development I, L.L.C.,* 2009 WL 588662 (Bankr. D. Utah 2009) (Debtor's criticism of expert's valuation and use of lay opinions were neither sufficient nor sufficiently credible to refute expert's testimony and report.).

362(d)(2)(A).

As noted above, the parties concede that there is no effective reorganization in prospect. This satisfies the second prong in § 362(d)(2)(B) for stay relief.[23]

The only "defense" posed to stay relief by the three objectors is based on their assertion, both here and in a separate adversary proceeding, that Seacoast's claim should be equitably subordinated below all other claims or recharacterized as equity.[24] As it noted in the status order issued August 26, 2010, the Court declined to delay the final stay relief hearing until the adversary proceeding had been heard, concluding that stay relief is a summary proceeding in which a creditor's claim must be treated as nominally valid unless the defense posed to it "goes to the heart" of the claim.[25] The Court has issued a scheduling order on the adversary proceeding and has set the matter down for trial in December of 2010.[26]

Seacoast is entitled to the modification of the automatic stay because the debtor lacks equity in the property that secures Seacoast's claim and there is no effective reorganization in prospect. The Court has broad discretion to modify the stay in a manner that protects the interests of the

---

[23] *See In re PMS Associates No. 2,* 104 B.R. 86, 89 (Bankr. S.D. Ind. 1989) (The debtor's burden to establish that the property is necessary for an effective reorganization requires not only a showing that the property is indispensable to its reorganization effort, "but that the property is essential for an effective reorganization *that is in prospect,*" citing *United Savings Association v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988).); *In re Washington Associates,* 147 B.R. 827, 830 (E.D.N.Y. 1992) (If debtor cannot establish that reorganization can be achieved within reasonable period, court must grant undersecured creditor relief from the automatic stay.); *In re Bowman, supra* at 238.

[24] *Douglas A. Friesen, M.D., et al v. Seacoast Capital Partners II, L.P.,* Adv. No. 10-5142, Complaint for Equitable Subordination filed July 20, 2010.

[25] Dkt. 403.

[26] Adv. Dkt. 9 and 11.

secured creditors, the debtor, and the creditor body.  The Court notes that stay modification that allows Seacoast to begin to realize upon its claim will not moot the equitable subordination claims of the objectors.  In addition, granting relief from the stay neither divests the estate of ownership of the property nor deprives the Court of oversight of its disposition.

The Court therefore modifies the automatic stay as follows:

Seacoast may proceed with an Article Nine non-judicial sale of the assets of the debtor that secure Seacoast's note, provided however, that:

1. No sale of the property shall take place absent this Court's further order;

2. The parties shall have 14 days from this order date to submit to the Court proposed bidding instructions that will govern the non-judicial sale;

3. Such instructions shall include without limitation the following provisions:

   a. Seacoast shall publicize the sale to anyone who may be interested, not only in acquiring the assets as an operational whole, but also those who may comprise the market for the technology patents owned by the debtor;

   b. Any Noteholder who is "in the money" may credit bid its debt at the sale, but must be prepared to satisfy in cash at closing, any and all senior liens as well as the direct costs of sale;

   c. All cash received, after payment of direct administrative expenses of the sale (including any patent broker expense or commission, or the like), shall be held by Seacoast pending the Court's further determination of the equitable subordination adversary proceeding

-8-

Case 09-10706    Doc# 426    Filed 10/12/10    Page 8 of 9

     and, in any event, shall not be distributed to any party without the further order of the Court;

  d.  If the prevailing party in the sale is a credit-bidder, the sale shall not close until such time as the Court has decided the equitable subordination adversary proceeding.

In modifying the stay to this extent, the Court intends that a "lively concourse of bidders" be brought to the sale and that the sale be in all respects commercially reasonable. This is the Court's attempt to allow Seacoast an opportunity to realize on its claim while affording other creditors an opportunity to expose the patents to a market in an effort to maximize the sales proceeds. Upon receipt of the suggested bidding instructions, the Court will issue an order containing same and Seacoast may proceed thereafter to arrange the sale. Seacoast shall take no other offensive measures to realize upon its claim without the further order of this court.

  Seacoast's motion for relief from stay is GRANTED as set out above.

  IT IS SO ORDERED.

# # #