UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

IN RE:                          )
                                )
QUVIS, Inc.                     )   Case No. 09-10706
                                )
Debtor                          )   Chapter 11
                                )

## NOTICE OF PROPOSED BID PROCEDURES

Notice is given that Seacoast Capital Partners II, L.P. ("Seacoast") intends to employ the following bidding instructions and procedures (the "Bid Procedures") for the solicitation and submission of bids to purchase the "Auctioned Assets" as defined below.

This Notice is filed by Seacoast in compliance with the requirements of the "Order Granting Limited Modification of the Automatic Stay on Motion Filed By Seacoast Capital Partners, II, L.P." (the "Lift Stay Order")(Doc. 426) issued on October 12, 2010 by the United States Bankruptcy Court for the District of Kansas (the "Bankruptcy Court").[1] In the event of a conflict between the terms of this Notice and the Lift Stay Order, the latter shall govern.

The term "Auctioned Assets" as used herein shall mean all of the personal property of the Debtor, whether tangible or intangible, of every kind and description, wherever located, including all accounts receivable; all chattel paper; all contracts (present, pending and executory); all equipment (office, laboratory and testing); all furnishings; all supplies; all fixtures; all goods; all instruments; all inventory; all patents (pending, provisional and registered, both foreign and domestic); trademarks (pending, provisional and registered), trade names, copyrights and other intellectual property or intellectual property rights; all software, including, but not limited to, Wraptor software and Paragon software; the names, e-mail addresses or domain names, telephone numbers and yellow page advertisements used in connection with the business of the Debtor and its subsidiaries; all customers lists, customer files, credit information, advertising, promotional and sales materials, sales data, surveys, and account histories and other information relating to the Debtor's business; and the business of the Debtor as a going concern and all goodwill associated therewith. The term "Auctioned Assets" excludes all Cash received from the successful bidder at Closing, any accounts that have been factored, all Bankruptcy Code Chapter 5 avoidance claims, and any other asset not pledged by QuVIS under the terms of the Note Agreement referenced in the Bankruptcy Court's Order on Debtor's Motion to Determine Secured Status (Doc #332) (the "Secured Status Order") at page 4.

---

[1] Because the Lift Stay Order has authorized a non-judicial sale, Seacoast understands the Bankruptcy Court's approval of this Notice and the Bid Procedures described herein would not preclude parties-in-interest from requesting injunctive relief under K.S.A. 84-9-625 of the Kansas UCC to stop the auction if they were of the view that the Bid Procedures are not in compliance with the requirements of Article 9 of the Kansas UCC. Thus Seacoast is of the view that the Court's approval of the bidding instructions, as contemplated by the Lift Stay Order, does not require further notice and opportunity for hearing as would be the situation if the auction sale were proposed under Section 363 of the Bankruptcy Code.

**NOTICE OF PROPOSED BID PROCEDURES**   Page 1
580952

The term "Equitable Subordination Action" refers to Adversary No. 10-5142 styled *Friesen et al v. Seacoast*, pending in the Bankruptcy Court.

As permitted by the Lift Stay Order, Seacoast intends to conduct an non-judicial sale (the "Sale") of the Auctioned Assets in compliance with Article 9 of the Kansas UCC. Attached hereto as Exhibit "A" is the form of Sale notification letter to be sent to the Debtor and secured parties of record, as required under Article 9. Both QuVIS and QuVIS noteholders who have filed UCC financing statements of record shall receive not less than twenty (20) days notice of the Auction described below.

Under the Bid Procedures described below, Seacoast will consider whether to sell the Auctioned Assets to the Stalking Horse Bidder (defined below) or to one or more other Qualified Bidders (defined below) that Seacoast determines, in its discretion, to have made the highest and/or best offer for the Auctioned Assets.

I. *The Stalking Horse Bid*.

Seacoast (or its affiliate) (the "Stalking Horse Bidder") will offer to purchase the Auctioned Assets for a total consideration of $1,300,000 (the "Stalking Horse Bid Price"). At the Closing (defined below) Seacoast as secured party will execute and deliver a "Bill-of-Sale" (in substantially the form attached as Exhibit "B") to effect the transfer of the Auctioned Assets. The Stalking Horse Purchase Price shall be paid at Closing as follows: (i) a cash payment in the amount of $267,296 as necessary to pay the claims of J. Greg Kite and the M. Christine Baugher Revocable Living Trust as further described below, and (ii) the balance shall be paid by means of a credit-bid resulting in a $1,032,704 reduction of debt owed by the Debtor to Seacoast.

If the Stalking Horse Bid is the Successful Bid (as defined below), the Stalking Horse Bidder may revoke the Stalking Horse Bid in the event that the Bankruptcy Court determines in the Equitable Subordination Action that Seacoast's claims or liens should be equitably subordinated. In the alternative, in the event that the Bankruptcy Court determines in the Equitable Subordination Action that Seacoast's claims or liens should be equitably subordinated, the Stalking Horse Bidder may nonetheless opt to close the Stalking Horse Bid by filing a notice with the Bankruptcy Court confirming it intends to close, and paying the entire Stalking Horse Bid Price in cash.

Although notice is given that the Stalking Horse Bid has been received, Seacoast will follow the additional bid procedures described below.

II. *Solicitation of Bids*.

In furtherance of conducting a commercially reasonable public sale under Article 9 of the Kansas UCC, Seacoast will make good faith efforts to send no later than fourteen (14) days before the Bid Deadline (by email or U.S. Mail) to each of the prospects listed on Exhibit "C", the form of Seacoast transmittal letter that is attached as Exhibit "D" along with the attachments referenced therein. The prospects listed on Exhibit "C" represent firms whom the Debtor has indicated may have an interest in purchasing the Auctioned Assets. Parties-in-interest in the QuVIS bankruptcy may send Seacoast the names and contact information for additional prospects on or before fourteen (14) days before the Bid Deadline. If such additional prospects

are provided, Seacoast will send the letter attached as Exhibit "D" and its attachments to such additional prospects. No commissions, fees or the like shall be charged to Seacoast or the Debtor in the event any such prospects become the Successful Bidder. In addition, Seacoast will cause notice of the Auction to be published at least fourteen (14) days before the Bid Deadline in one or more of the following industry periodicals after taking into consideration their publication deadlines and cost: SMPTE Spectrum, Digital Cinema Buyers Guide, Highdef, SPIE Optical Engineering, Wall Street Journal.

III.   *Qualified Bids*.

To be a Qualified Bid, a Bid (other than that made by the Stalking Horse Bidder) must satisfy all of the following requirements:

A.   The Bid must be submitted in writing and received by Seacoast at the below addresses no later than the first business day following thirty-days (30) days after the Bankruptcy Court issues an order containing or concerning this Notice (the "Bid Deadline"):

SEACOAST
c/of Eben Moulton
55 Ferncroft Rd
Danvers MA 01923
Email: emoulton@seacoastcapital.com

SEACOAST'S COUNSEL
J. Maxwell ("Max") Tucker
Patton Boggs LLP
2001 Ross Avenue, Suite 3000
Dallas, Texas 75201
Telephone: (214) 758-1500
Email: mtucker@pattonboggs.com

B.   The Bid must be (a) for the purchase of all of the Auctioned Assets, (b) state the entity or entities bidding on the Auctioned Assets; and (c) state the proposed purchase price, which must be payable in Cash at Closing.

C.   The Bid must be a "firm offer" and not contain any contingencies to the validity, effectiveness, or binding nature, including, without limitation, contingencies for financing, due diligence, or inspection.

D.   The Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of cash or in other form of immediately available U.S. funds, in an amount equal to $100,000. The Good Faith Deposit shall be delivered to Seacoast's counsel, Patton Boggs LLP, to be held without interest in the trust account of Patton Boggs LLP pending closing of the Sale. Wire instructions will be made available to such account upon request.

    E.      The Bid must be for cash in an amount to equal or exceed the sum of (a) the Stalking Horse Bid Price; and (b) $100,000 (initial overbid).

    F.      The Bid must be on terms that are, in Seacoast's business judgment, the same or better than the terms in the Bill-of-Sale. A Bid shall include a copy of the Bill-of-Sale marked to show all changes requested by the Bidder.

    G.      The Bid must be irrevocable until ten (10) business days after the Bid Deadline.

    H.      The Bid must be accompanied by evidence reasonably satisfactory to Seacoast demonstrating the Bidder's financial ability to close no later than ten (10) business days after the Bid Deadline.

    I.      The Bid must not request or entitle the Qualified Bidder to any fee, expense-reimbursement, or similar type of payment.

Any Bid submitted in accordance with the foregoing procedures shall be deemed a "Qualified Bid." Each bidder submitting a Qualified Bid shall be deemed a "Qualified Bidder." In addition, the Stalking Horse Bidder shall be deemed a Qualified Bidder.

If Seacoast receives a bid that would constitute a Qualified Bid, except for the fact the bid only proposes to purchase the Debtor's interest in intellectual property (patents and trademarks), Seacoast shall provide such bid to the other Qualified Bidders, who shall have the option to make a bid solely with respect to Debtor's interest in intellectual property. Such bids are referred to as "<u>IP Only Bids</u>".

IV.    *Access to Information*.

Any entity that desires to submit a Qualified Bid for the Auctioned Assets shall be permitted to conduct and complete reasonable due diligence prior to the Bid Deadline as set forth herein. Each entity seeking to submit a Bid shall, upon execution of a confidentiality agreement in the form provided by Seacoast, shall be allowed to inspect the Auctioned Assets, and the Debtor's non-privileged records, upon reasonable prior notice during ordinary business hours.

V.    *Auction and Selection of Winning Bid*.

Following expiration of the Bid Deadline, Seacoast will file with the Bankruptcy Court a notice listing the names of all entities that timely submitted a Qualified Bid, as well as the bid price offered by such entities. Such notice will also include any IP Only Bids received.

Following expiration of the Bid Deadline, Seacoast will review all Qualified Bids and determine which Qualified Bid(s) represents the highest or best offer for the Auctioned Assets. Upon review of the Qualified Bids, Seacoast may elect to increase the Stalking Horse Bid Price.

No later than one (1) business day before the Auction, Seacoast will notify all Qualified Bidders of (i) the Qualified Bid, as determined in Seacoast's discretion, to represent the highest or best offer (the "<u>Baseline Bid</u>"). The Stalking Horse Bid may be the Baseline Bid.

The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factor that Seacoast reasonably deems relevant to the value of the Qualified Bid, including, among other things, the following, which may govern, but not control: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities, if any; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent, and impact of any potential delay in closing; (e) any purchase-price adjustments; (f) the impact of the contemplated transaction on any actual or potential litigation; and (g) the impact and significance of any IP Only Bids (collectively, the "<u>Bid Assessment Criteria</u>").

Seacoast will conduct the Auction five business days immediately following the Bid Deadline, at 10:00 a.m. (Central Time). Unless otherwise stated, the Auction will take place in the offices of Fleeson, Gooing, Coulson and Kitch, L.L.C., 1900 Epic Center, 301 W. Main, Wichita, Kansas. The following procedures shall govern the Auction:

A. <u>Seacoast shall Conduct the Auction</u>. Seacoast and its professionals shall direct and preside over the Auction. At the start of the Auction, Seacoast shall describe the terms of the Baseline Bid and open the Auction for higher and/or better Bids. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, with all material terms of each Bid fully disclosed to all other Qualified Bidders. Seacoast shall maintain a record of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

B. <u>Participation at the Auction</u>. Only Qualified Bidders are eligible to participate at the Auction. Each Qualified Bidder must appear in person at the Auction or through a duly authorized representative.

C. <u>Overbids</u>. During the Auction, bidding shall begin with the Baseline Bid and subsequently continue in minimum increments of at least $100,000, or such other amount as may be determined by Seacoast during the Auction. Other than as set forth herein, Seacoast may conduct the Auction in the manner it determines will result in the highest, best, and/or otherwise financially superior offer for the Auctioned Assets. The Stalking Horse Bidder shall be permitted to increase the Stalking Horse Bid Price in increments of at least $100,000 if it so chooses.

D. <u>Additional Procedures</u>. In its reasonable discretion, Seacoast may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion, will better promote the goals of the Auction. All such rules will provide that all overbids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

E.  Upon conclusion of the bidding, the Auction shall be closed, and Seacoast shall (a) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Sale, (b) identify the highest, best, and/or otherwise financially superior offer for the Auctioned Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), (c) if Seacoast in its sole discretion elects, identify the next highest or otherwise best offer after the Successful Bid (the "Back-Up Bid"), and advise the entity submitting such Back-up Bid (the "Successful Back-Up Bidder"), (d) announce to the participants the results of the Auction, and (e) file a notice with the Bankruptcy Court disclosing the identity of the Successful Bidder and the amount of the Successful Bid, and if applicable such information regarding the Successful Back-Up Bidder.

Seacoast reserves the right to reject, at any time before the Closing, any Bid or Qualified Bid that Seacoast determines is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the these Bid Procedures, or (iii) or after comparison of the Bids with the IP Only Bids, Seacoast concludes that a superior transaction can be achieved by selling the intellectual property assets separate and apart from the remaining Auctioned Assets.

VI.  *Bids to Remain Open*.

Notwithstanding Seacoast's acceptance of a Qualified Bid as the Successful Bid, the Successful Back-Up Bid shall remain open and irrevocable until the closing or consummation of the Sale and may be used to close or consummate a Sale without further notice if a sale to the Successful Bidder is not timely consummated as detailed in that Bid. If the Successful Bidder fails to Close within the deadline specified below, the Successful Back-Up Bidder shall be deemed to be the Successful Bidder.

VII.  *Closing*.

Seacoast and the Successful Bidder shall use commercially reasonable efforts to consummate the Sale, including the payment of the purchase price within seven (7) days of the Auction (the "Closing"). The Successful Bidder's Good Faith Deposit shall be applied by Seacoast against the cash portion of the purchase price to be paid by the Purchaser at Closing. Notwithstanding the above, in the event the final Bid made by the Stalking Horse Bidder is the Successful Bid, the Closing shall occur as soon as practicable after the Bankruptcy Court has decided the Equitable Subordination Action.

VIII.  *Deposits*.

All Good Faith Deposits received by Seacoast shall be maintained in a segregated account and be subject to the jurisdiction of the Bankruptcy Court. Notwithstanding the irrevocable nature of each Qualified Bid as set forth above, within seven (7) business days after the Auction, Seacoast shall return the Good Faith Deposit of all Bidders other than the Successful Bidder and the Successful Back-Up Bidder without further order of the Bankruptcy Court.

Except as otherwise set forth below, within a reasonable time after the Closing, and without further order of the Bankruptcy Court, Seacoast shall return the respective Good Faith Deposits to each Qualified Bidder that is not the Successful Bidder.

IX.     *Successful Bidder Default*.

If the Successful Bidder fails to close the purchase of the Auctioned Assets after approval of the Successful Bid by Seacoast at the Auction, such Bidder's Good Faith Deposit shall be forfeited to and retained irrevocably by Seacoast (subject to further orders of the Bankruptcy Court), and Seacoast specifically reserves the right to seek all appropriate additional damages from any such Successful Bidder.

X.      *Costs and Expenses*.

Each bidder (whether or not a Qualified Bidder) shall bear its own costs and expenses (including any legal or other professionals' fees and expenses) incurred in connection with its investigation and evaluation of the Auctioned Assets.

No other finder's fees, broker's fees, or commissions will be paid by Seacoast in connection with any transaction that may result hereby. No bidder shall be entitled to any fee, expense reimbursement, or similar type of payment. Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Bid Procedures.

XI.     *As-Is, Where-Is Sale*.

The sale of the Auctioned Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Seacoast, its agents, or the QuVIS bankruptcy estate. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Auctioned Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Auctioned Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Auctioned Assets, or the completeness of any information provided in connection therewith or the Auction.

XII.    *Liens shall attach to proceeds*.

All of the Debtor's rights, title, and interest in and to the Auctioned Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon, with such interests to attach to the proceeds of the sale of the Auctioned Assets in the same order of priority as existed prior to the Closing. This provision does not limit the power of the Bankruptcy Court to alter such priorities in the Equitable Subordination Action.

XIII.  *Reservation of Rights; Deadline Extensions.*

In its reasonable business judgment, Seacoast reserves the right to (i) impose, at or prior to the Auction, additional terms and conditions on the Sale of the Auctioned Assets; (ii) extend the deadlines set forth in the Bid Procedures; (iii) adjourn the Auction at the Auction; (iv) withdraw from the Auction all or a portion of the Auctioned Assets at any time prior to or during the Auction or cancel the Auction; (v) reject all Qualified Bids if no bid is, in Seacoast's reasonable business judgment for fair and adequate consideration; and (vi) modify the rules regarding conduct of activities at the Auction, including, among other things, the manner in which bids are submitted during the Auction and the permitted increments of such bids.

XIV.  *Preservation of Auctioned Assets pending Closing, Cost of Sale.*

Seacoast may exercise the rights of a secured party under Section 9.609 of the UCC to take possession of the Auctioned Assets pending the Closing. In its sole discretion, Seacoast may incur or advance reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of the Auctioned Assets, as further described in Section 9.615 of the UCC, and shall be reimbursed for such expenses from the proceeds of the Auctioned Assets prior to payments to entities holding a lien against the Proceeds, regardless of the outcome of the Equitable Subordination Action. If a party-in-interest disputes the reasonableness of such expenses, the Bankruptcy Court may determine the reasonableness of same pursuant to Section 506 of the Bankruptcy Code.

XV.  *Payment of certain liens.*

As noted on page 3 of the Lift Stay Order, it appears that J. Greg Kite claims $133,933 is owed on his note, and the M. Christine Baugher Revocable Living Trust claims $133,363 is owed on its note. At Closing, Seacoast shall pay from the proceeds it receives from the Sale of the Auctioned Assets such lien claims in those specified amounts.

Dated:   October 20, 2010

                                      Respectfully submitted,

                                      FLEESON, GOOING, COULSON & KITCH, L.L.C.

                                      By:    /s/ Thomas J. Lasater
                                                   Thomas J. Lasater, Reg. No. 11440
                                                   P.O. Box 997
                                                   Wichita, Kansas 67201
                                                   Telephone: (316) 267-7361
                                                   Email: tlasater@fleeson.com

                                      and

J. Maxwell ("Max") Tucker  
PATTON BOGGS LLP  
2000 McKinney, Suite 1700  
Dallas, Texas 75201  
Telephone: (214) 758-1500  
Email: mtucker@pattonboggs.com

ATTORNEYS FOR SEACOAST CAPITAL
PARTNERS II, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of OctoberOctober, 2010, 2010, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send a notice of electronic filing to the Office of the U.S. Trustee and to all parties receiving electronic notice, and that I mailed copies of the same to all additional parties on the attached list.

**/s/ Thomas J. Lasater**

<u>Exhibit A</u>
<u>Article 9 Sale Notification Letter</u>

**EXHIBIT A TO NOTICE OF PROPOSED BID PROCEDURES**
580952

\_\_\_, 2010

## NOTIFICATION OF DISPOSITION OF COLLATERAL

**To:** (VIA FACSIMILE, FEDEX, CERTIFIED MAIL, RETURN RECEIPT AND E-MAIL)

*[Addresses to include Borrower and all known secured lenders as determined by updated UCC searches and tax lien searches in accordance with the requirements of the UCC]*

**From:** Seacoast Capital Partners II, L.P., as lender ("Lender")
c/of Jamie Donelan
55 Ferncroft Rd
Danvers, MA 01923
Telephone: (978) 750-1308

**Name of Debtor:** Quvis, Inc.

**Re:** That certain First Amended and Restated Convertible Loan and Security Agreement among Quvis, Inc., a Kansas corporation (together with its successors and assigns, "Borrower"), Lender and the other lenders party thereto, dated June 30, 2003, as further joined, amended or modified from time to time from time to time (the "Loan Agreement", and together with any and all promissory notes issued by Debtor to Seacoast in connection therewith, the "Loan Documents"; defined terms used herein and not otherwise defined shall have the meaning assigned such terms in the Loan Agreement)

We will sell (or lease or license, as applicable), in one or more than one transaction, all or any portions of the Borrower's assets (the "Collateral") wherever such Collateral may from time to time be located. Such Collateral having been pledged to Lender pursuant to the Loan Documents or otherwise to secure the amounts from time to time due and owing to Lender pursuant to the Loan Documents by Borrower, as the debtor and borrower, under the Loan Documents.

The sale of the Collateral will be to the highest qualified bidder in public as follows:

Date: _____, 2010
Time: 10:00 a.m. (Wichita, Kansas time)
Location: Offices of Fleeson, Gooing, Coulson and Kitch, L.L.C.
1900 Epic Center
301 W. Main
Wichita, Kansas

**EXHIBIT A TO NOTICE OF PROPOSED BID PROCEDURES**
580952

Addition terms and conditions of the sale of the Collateral are set forth in the bidding instructions contained in or referenced in that certain Order issued on _____, 2010, in case number 09-10706 by the United States Bankruptcy Court for the District of Kansas.

For avoidance of doubt, the property subject to this notice of disposition shall include, without limitation, all property subject to Lender's security interest in which Borrower previously had, now has or hereafter has any right, title or interest.

Borrower is entitled to an accounting of the unpaid indebtedness secured by the Collateral that Lender intends to sell (or lease or license, as applicable). You may request an accounting by calling us at (978) 750-1308, by emailing us at **jdonelan@seacoastcapital.com**, by sending us a letter by certified mail, return receipt requested, or by facsimile at (978) 750-1301.

    Sincerely,

    SEACOAST CAPITAL PARTNERS II,
    L.P., as Lender


    By:_____
    Name:_____

    Title:_____

cc: _____

**EXHIBIT A TO NOTICE OF PROPOSED BID PROCEDURES**
580952

<u>Exhibit B</u>
<u>Form of Bill-of-Sale to be Delivered at Closing</u>

<u>BILL OF SALE</u>

FOR AND IN CONSIDERATION OF the sum of $_____, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seacoast Capital Partners II, L.P., a Delaware limited partnership, as lender under the hereinafter defined Loan Agreement and Notes (in such capacity, "<u>Seller</u>"), does hereby absolutely sell, transfer, convey and assign to [_____], a _____ (together with its successors and assigns, "<u>Buyer</u>"), all of Seller's and Debtor's (as defined below) right, title, and interest in and to Debtor's **personal property, whether tangible or intangible, of every kind and description, wherever located, including all accounts receivable; all chattel paper; all contracts (present, pending and executory); all equipment (office, laboratory and testing); all furnishings; all supplies; all fixtures; all goods; all instruments; all inventory; all patents (pending, provisional and registered, both foreign and domestic); trademarks (pending, provisional and registered), trade names, copyrights and other intellectual property or intellectual property rights; all software, including, but not limited to, Wraptor software and Paragon software; the names, e-mail addresses or domain names, telephone numbers and yellow page advertisements used in connection with the business of the Debtor and its subsidiaries; all customers lists, customer files, credit information, advertising, promotional and sales materials, sales data, surveys, and account histories and other information relating to the Debtor's business; and the business of the Debtor as a going concern and all goodwill associated therewith, patents (pending, provisional and registered, both foreign and domestic); trademark's (pending, provisional and registered), trade names, copyrights and other intellectual property or intellectual property rights and all goodwill associated therewith** (collectively, the "<u>Debtor Property</u>").

TO HAVE AND TO HOLD the same unto Buyer and its successors and assigns forever.

This conveyance is (x) made pursuant to (i) that certain First Amended and Restated Convertible Loan and Security Agreement among Quvis, Inc., a Kansas corporation (together with its successors and assigns, "<u>Debtor</u>"), Seller and the other lenders party thereto, dated June 30, 2003, as further joined, amended or modified from time to time from time to time (the "<u>Loan Agreement</u>", and together with any and all promissory notes issued by Debtor to Seacoast in connection therewith, the "<u>Loan Documents</u>"), (ii) the public UCC foreclosure sale held on _____, 2010, at 10:00 a.m., Wichita, Kansas time, at the offices of Fleeson, Gooing, Coulson and Kitch, L.L.C., 1900 Epic Center, 301 W. Main, Wichita, Kansas, and (iii) the applicable provisions of the Uniform Commercial Code as in effect in the State of Kansas and (y) intended to have the effects set forth in Section 9-617 of the Uniform Commercial Code as in effect in the State of Kansas.

13

580952

THERE ARE ABSOLUTELY AND UNEQUIVOCALLY NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, BEING GIVEN IN THIS DISPOSITION AS TO DEBTOR PROPERTY, INCLUDING, BUT NOT LIMITED TO, REPRESENTATIONS OR WARRANTIES RELATING TO TITLE, POSSESSION, ENFORCEABILITY, QUIET ENJOYMENT, MERCHANTABILITY, CONDITION, QUALITY, DURABILITY, DESIGN, OPERATION, FITNESS FOR USE, AUTHORITY, PRIORITY, OR PERFECTION OF ANY LIENS OR SECURITY INTERESTS. ALL THE FOREGOING REFERENCED REPRESENTATIONS AND WARRANTIES ARE HEREBY WAIVED AND DISCLAIMED BY SELLER FOR ITSELF AND ITS LEGAL REPRESENTATIVES, SUCCESSORS AND ASSIGNS.

IN FURTHERANCE OF THE FOREGOING, BY ITS ACCEPTANCE OF THIS BILL OF SALE, BUYER IS DEEMED TO HAVE ACCEPTED THE DEBTOR PROPERTY AND ALL OTHER PROPERTY PURPORTED TO BE TRANSFERRED IN THIS BILL OF SALE "AS IS" AND "WHERE IS" AND WITH ALL FAULTS. BUYER IS ASSUMING THE RISK OF DETERIORATION SUBSEQUENT TO THE DATE HEREOF IN THE VALUE OF THE DEBTOR PROPERTY. ACCORDINGLY, BY ITS ACCEPTANCE OF THIS BILL OF SALE AND ASSIGNMENT, BUYER ACKNOWLEDGES THAT BUYER HAS NO CLAIM OF ANY INDEMNIFICATION BY SELLER, BY CONTRACT, IN LAW OR IN EQUITY. BUYER SHALL HAVE NO RECOURSE WHATSOEVER TO SELLER, WHETHER WITH RESPECT TO THE CONDITION OF THE DEBTOR PROPERTY OR THE PRIORITY OR ACTUAL PERFECTION OF SELLER'S INTERESTS (IF ANY) IN THE DEBTOR PROPERTY.

This instrument shall be governed and construed in accordance with the laws of the State of Kansas. This instrument constitutes the entire agreement between Seller and Buyer as to the subject matter hereof and thereof.

In no event will Seller, any lender for whom Seller serves as agent, or any of their respective attorneys, agents, employees, officers, successors or assigns be liable to Buyer for lost profits or other special or consequential damages.

EACH OF THE PARTIES HERETO VOLUNTARILY AND KNOWINGLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE TRANSACTION DOCUMENTS. INSTEAD, ANY DISPUTES RESOLVED IN COURT WILL BE RESOLVED IN A BENCH TRIAL WITHOUT A JURY.

[Remainder of page intentionally blank; signature page follows]

IN WITNESS WHEREOF, Seller has hereunto set its hand and seal as of the acknowledgement set forth below, but to be effective the __th day of _____, 2010.

|  | SELLER: |
|---|---|
| Signed, sealed and delivered in the presence of: | SEACOAST CAPITAL PARTNERS II, L.P., a Delaware limited partnership, as Lender |
| Witness: _____  <br><br>Witness: _____ | By: _____ <br> Name: _____ <br> Title: _____ |

STATE OF KANSAS

COUNTY OF _____
This instrument was acknowledged before me this __th day of _____, 2010, by _____, as _____ of Seacoast Capital Partners II, L.P., a Delaware limited partnership. She/he personally appeared before me, is personally known to me or produced a driver's license as identification, and did not take an oath.

[NOTARIAL SEAL]

My Commission Expires:

_____

Print name: _____

Notary Public, State of Kansas

**EXHIBIT B TO NOTICE OF PROPOSED BID PROCEDURES**
580952

Exhibit C
List of Prospects

AJA video systems
Alcorn McBride
Analog Devices   (JPEG 2000 asics)
Apple (final cut group)
Barco projection/digital cinema
Christie projection/digital cinema
Cube
Deluxe
Disney
Dolby digital cinema group
DoReMi
GlueTools
JVC projection/digital cinema
NEC projection/digital cinema
Panavision
Red Camera
RealD
Samsung (projection/digital cinema and professional recorder groups)
Sanyo projection/digital cinema
Sony (projection/digital cinema and professional recorder groups)
Sony America
Texas Instruments projection/digital cinema
Thompson/Technicolor

**EXHIBIT C TO NOTICE OF PROPOSED BID PROCEDURES**
580952

Exhibit D

Seacoast Bid Prospects Letter

**EXHIBIT D TO NOTICE OF PROPOSED BID PROCEDURES**
580952

[Seacoast Letterhead]

[Date]

_____
_____
_____

To Whom it May Concern:

Seacoast Capital Partners II, L.P. ("Seacoast"), as a secured party, has been authorized to conduct an auction of substantially all of the assets of QuVIS, Inc., a Kansas corporation ("QuVIS"). The purpose of this letter is to provide you with certain publicly available information regarding QuVIS and the auction process that will be followed by Seacoast. Enclosed with this letter, are the following items.

1. A copy of the Notice of Proposed Bid Procedures [Seacoast will supplement this with the Court's approval order of the bid procedure]. As set forth in the Notice, the assets will be sold on an "AS IS, WHERE IS" basis.

2. A copy of a "Disclosure Statement" filed by QuVIS in its bankruptcy case on November 9, 2009. You should be aware that the Bankruptcy Court did not approve QuVIS's request to solicit votes using this Disclosure Statement, nor did the Court approve its contents.

3. A copy of a Consilium Partners Valuation Report, dated August 19, 2010, which was admitted as an exhibit at a hearing in the QuVIS bankruptcy held on September 2, 2010. You should be aware that this Report was prepared for use by Seacoast in the Seacoast bankruptcy proceedings, and that you are not authorized to rely on it for any purpose.

If you are interested in further evaluating whether to make a bid for the assets of QuVIS, please contact the undersigned at your earliest convenience.

/s/ Jamie Donelan
Seacoast Capital
55 Ferncroft Rd., Suite 110
Danvers, MA 01923
jdonelan@seacoastcapital.com
(W) (978) 750-1308
(M) (617) 816-9375
(F) (978) 750-1301

**EXHIBIT D TO NOTICE OF PROPOSED BID PROCEDURES**
580952

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of October, 2010, a true and correct copy of this NOTICE OF PROPOSED BID PROCEDURES was filed electronically with the United States Bankruptcy Court for the District of Kansas using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ Thomas J. Lasater

**CERTIFICATE OF SERVICE / NOTICE OF PROPOSED BID PROCEDURES**
580952